UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WALEED SAYED, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 21-CV-11891-ADB |
| UNITED STATES MARITIME ADMINISTRATION, | * * * * | |
| Defendant. | * * | |

**MEMORANDUM & ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Before the Court is Defendant United States Maritime Administration's ("MARAD") motion for summary judgment on Plaintiff Waleed Sayed's ("Mr. Sayed" or "Plaintiff") request for documents submitted pursuant to the Freedom of Information Act ("FOIA"). For the following reasons, the motion, [ECF No. 12], is DENIED.

I. **INTRODUCTION**

This matter involves a vessel owned by MARAD—the SS Altair (the "Altair")—and the dry dock in Mobile, Alabama, (the "Alabama Dry Dock") owned and operated by Alabama Shipyard, LLC, where the vessel was docked during the Spring of 2020. [ECF No. 1-1 at 2]. Through his FOIA request, Plaintiff seeks to determine whether the dry dock "had a certified capacity sufficient to drydock [the Altair.]" [ECF No. 15 at 1].

Unsatisfied with MARAD's response that it had only two responsive documents in its possession, Plaintiff brought the instant action to compel MARAD to produce the remaining

requested records.  See generally [ECF No. 1 ("Compl.")].  MARAD contends that it has satisfied its FOIA obligations and moves for summary judgment.  [ECF No. 12].

## II.  FACTUAL BACKGROUND

The following facts are undisputed unless indicated otherwise.  The Altair, a vessel owned by the Department of Transportation, is part of MARAD's Ready Reserve Force ("RRF") program.[1]  [ECF No. 14-1 ("Harrington Decl.") ¶¶ 1, 2, 8].  Although the ship is owned by the federal government, it is operated by a contractor (the "Ship Manager") that further subcontracted repairs of the Altair at the Alabama Dry Dock.[2]  [Harrington Decl. ¶¶ 1, 2, 8; ECF No. 16 ¶ 5].

On August 18, 2021, Mr. Sayed submitted a FOIA request to MARAD seeking documents concerning the certification of the Alabama Dry Dock that would enable him to determine whether the dry dock "had a certified capacity sufficient to drydock [the Altair.]" [ECF No. 14 ¶ 1; ECF No. 15 at 1; ECF No. 16 ¶¶ 1–3].  Mr. Sayed claims that he was the engineer who signed the dry dock's July 2019 certification and "is aware" of a November 2019 Certificate that further downgraded the drydock below the capacity necessary for safely docking

---

[1] The RRF "is a subset of vessels within MARAD's National Defense Reserve Fleet (NDRF) ready to support the rapid worldwide deployment of U.S. military forces." *The Ready Reserve Force*, U.S. DEP'T OF TRANSPORTATION: MARITIME ADMINISTRATION, https://www.maritime.dot.gov/national-defense-reserve-fleet/ndrf/maritime-administration%E2%80%99s-ready-reserve-force (last visited Dec. 20, 2022).

[2] The factual circumstances regarding ownership and operation of the Altair, as set forth by MARAD, are supported by the sworn declaration of Douglas M. Harrington, "the Deputy Associate Administrator for Federal Sealift, Maritime Administration, United States Department of Transportation (MARAD)." [ECF No. 16 ¶ 1].  Notwithstanding this supporting declaration, Plaintiff seeks to fabricate a dispute by stating that he "lacks sufficient information" to admit or deny this information.  However, a nonmoving party must set forth specific, material evidence to show a genuine disagreement, Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)), and Plaintiff has not done so here.

the SS Altair." [Compl. ¶¶ 10, 13]. In particular, his request sought "[a]ll documents evidencing the certification of the [Alabama Dry Dock,]" "[t]he complete two (2) page dry dock certification utilized by [the Government] to authorize the drydocking of [the] SS Altair beginning in April of 2020 in the Alabama Dry Dock[,]" "[a]ll documents concerning the 'self-certification' of the Alabama Dry Dock . . . if any, undertaken or completed on or after November 26, 2019[,]" and "[a]ll documents concerning United States Navy certifications of the Alabama Dry Dock, if any, undertaken or completed on or after November 26, 2019." [ECF No. 16 ¶ 2].

  MARAD responded to the request by assigning it the control number 21-0085-FOIA and then searching to identify documents responsive to the request. [ECF No. 16 ¶¶ 6, 9–10]. The extent of the search was set forth in a declaration submitted by Douglas Harrington who, in addition to being the Deputy Associate Administrator for Federal Sealift at MARAD, is also the Director of the Office of Ship Operations and manages the RRF program. See generally [Harrington Decl. ¶¶ 1–18]. His declaration describes both the typical process MARAD employs upon receipt of a FOIA request, [id. ¶ 9], and the specific search conducted in response to Plaintiff's request, [id. ¶¶ 7, 10–11, 13, 16]. As provided by the declaration, when MARAD receives a discrete FOIA request for documents related to a specific vessel, such as here, it typically searches for responsive documents by reviewing the network shared drives for the agency headquarters' Division of Maintenance and Repair and e-mail communications between the field-level Area Division staff and the headquarters. [Id. ¶ 9]. Additionally, at the field-level, "the Area Division reviews their own network shared drive and e-mails, including communications by e-mail with contracted ship managers." [Id.].

  The Harrington declaration goes on to explain that in response to Plaintiff's specific request, Harrington and his subordinates at the Office of Ship Operations conducted a search by

taking the following steps: (1) at the field-level, the Ship Operations Maintenance Officer ("SOMO"), was tasked with the search for responsive records and (2) at the headquarters-level, the chief of the Division of Maintenance and Repair and his subordinate, the "ship class Type Desk-General Engineer, were tasked to provide any files from the divisional shared drive [or] network e-mail . . . ." [Harrington Decl. ¶¶ 9, 11]. Further, Harrington, as the "overall program manager[,]" "searched [his] network and e-mail for any related documentation." [Id. ¶ 11]. Through that search, MARAD identified two pages of responsive records, which were included in the agency's September 29, 2021 response to Plaintiff's request.

      Dissatisfied with MARAD's response, Plaintiff filed an appeal arguing that the agency's response was incomplete and requesting that MARAD "produce (1) the complete July 2019 certification with the associated "table," (2) the alleged November 2019 certification, and (3) any Alabama Dry Dock certificates issued after November 2019. [Harrington Decl. ¶ 15; ECF No. 16 ¶¶ 14, 15]. In turn, Harrington "tasked the senior, field level GS-15 staffer responsible for overseeing the drydocking with the specific direction to confirm whether MARAD possessed the second page of the July certification that included the "table" of information that Plaintiff described. [Harrington Decl. ¶ 16]. Additionally, Harrington "tasked the field-level, GS-14 staff member responsible for coordinating resource requests" who "is assigned to the MARAD Area Division responsible for [] ship drydocking" "to provide any additional responsive documents as well." [Id. ¶ 16]. The staff members confirmed that the first page of the certification was provided by Alabama Shipyard, LLC, but that the submission by the company "only included the certification page signed by [Plaintiff], and not the table . . . ." [Id. ¶ 17]. Harrington provides no detail, however, about the method employed by the staff members to search for documents. See [id. ¶ 17]. Having found no additional records, MARAD issued a letter to Plaintiff on

4

December 28, 2021, asserting that it had performed a search "reasonably calculated to uncover all responsive documents and that it did not find any responsive documents that were not already produced" and therefore denied Plaintiff's appeal.  [Id. ¶ 18].

### III.    DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see also Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018).  In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

"FOIA cases are typically decided on motions for summary judgment." Am. Civil Liberties Union of Mass., Inc. v. U.S. Immigration & Customs Enf't, 448 F. Supp. 3d 27, 35 (D. Mass. 2020) (quoting Am. Civil Liberties Union Found., Inc. v. United States Dep't of Educ., 320 F. Supp. 3d 270, 276 (D. Mass. 2018)).  In a FOIA case, a court may award summary judgment to an agency upon the agency's showing that it conducted a search "reasonably calculated to discover the requested documents." Maynard v. Cent. Intelligence Agency, 986 F.2d 547, 559 (1st Cir. 1993) (quoting Safecard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  The agency meets its burden by showing that "it has 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Oleskey ex rel. Boumediene v. U.S. Dep't of Defense, 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68

(D.C. Cir. 1990)).  The government "may rely upon affidavits provided they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith." Maynard, 986 F.2d at 559 (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985)).  "Sufficient details in government affidavits may include 'setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'"  Oleskey, 658 F. Supp. 2d at 294 (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (ellipses in original)).  Stated differently, the agency "must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  Johnson v. Cent. Intelligence Agency, 330 F. Supp. 3d 628, 638 (D. Mass. 2018) (quoting Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)).

Applying this legal framework to the instant proceeding, the Court must first determine whether MARAD has demonstrated that it conducted an adequate search in response to Plaintiff's FOIA request.  MARAD relies solely on the Harrington Declaration to satisfy its burden, and thus the Court's analysis is largely confined to that document.  Having carefully considered the affidavit, the Court finds that it lacks sufficient detail to permit the Court to conclude that MARAD has met its FOIA obligations.

The declaration, as discussed above, sets forth both MARAD's typical process when responding to FOIA requests and the specific search undertaken to identify documents responsive to Plaintiff's request.  It appears that Harrington, as the Director of the Office of Ship Operations, managed the search and in so doing directed staffers at the field-level and headquarters-level to aid in the search.  [Harrington Decl. ¶¶ 7, 10, 11, 13, 16].  In describing the search, however, Harrington omitted several key details including, for example, (1) information

that would enable the Court to understand the structure and extent of MARADs records system, (2) the specific file locations searched by field-level staff, and (3) the methods employed by staff members to conduct the search.

Other sessions of this Court have looked to whether an agency's supporting affidavits "present a comprehensive picture of the relevant system of records located within [the agency,]" Oleskey, 658 F. Supp. 2d at 295; Sephton v. Fed. Bureau of Investigation, 365 F. Supp. 2d 91, 97 (D. Mass. 2005), aff'd, 442 F.3d 27 (1st Cir. 2006), and have granted summary judgment where the affidavits provide that level of detail. Harrington's declaration, however, does not attempt to describe MARAD's records system, and only makes general references to various "network shared drives" and "network e-mail" as file locations that were, and would be typically, searched. Although the Court has no reason to doubt that the referenced shared drives would likely contain responsive documents, the level of detail provided does not permit the Court to determine whether those are the only locations where responsive materials are likely to be found. Moreover, besides stating in a conclusory fashion in its December 28, 2021 response to Plaintiff that MARAD "had performed a search reasonably calculated to uncover all responsive documents[,]" [Harrington Decl. ¶ 18], the declaration does not aver that all files likely to contain responsive materials were searched. Cf. Oleskey, 658 F. Supp. 2d at 297 ("Under FOIA, an agency must respond to an information request by completing a reasonable search of those places where responsive records are likely to be found.") (citing Oglesby, 920 F.2d at 68).

Relatedly, the declaration also fails to specify the particular file locations that were searched at the field-level. Harrington states that the search was assigned to the SOMO, the assigned supervisor of field activity, but does not identify what files the SOMO actually searched. See [Harrington Decl. ¶ 11]. This omission may well have been an oversight, but it is

7

MARAD's burden, as the movant, to demonstrate the adequacy of its search. It is further insufficient that the declaration elsewhere states that MARAD, as part of its generic response to a FOIA request, would direct a field-level staff member to search the network shared drive and e-mails. [Id. ¶ 9]. That information has little bearing on the inquiry before the Court: whether an adequate search occurred in this specific instance. The Court also notes that the declaration's description of the additional search undertaken in response to Plaintiff's appeal of MARAD's initial response is similarly flawed. Although Harrington states that he tasked (1) a GS-15 staffer responsible for overseeing drydocking to confirm whether MARAD possessed a specific document and (2) a GS-14 staffer responsible for ship drydocking and coordinating resource requests with providing "additional responsive documents[,]" the declaration does not include any information regarding the file locations these staffers actually searched. See [id. ¶ 16].

The declaration is further insufficient because it omits information regarding the method used to search the file locations for responsive documents. Oleskey, 658 F. Supp. 2d at 294 ("In a summary judgment context, the burden rests with the agency subject to a FOIA request to establish that it has 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'") (quoting Oglesby, 920 F.2d at 68). Sufficient details regarding the methods employed may include "setting forth the search terms and the type of search performed . . . ." Iturralde, 315 F.3d 313–14. In this aspect the declaration is entirely lacking. It does not include any information about search terms used to search the various databases and network email and offers no description of how the staffers undertook the search. Without this and the previously discussed categories of information, the Court is unable to assess the reasonableness and adequacy of MARAD's search and therefore cannot grant the motion for summary judgment on the record before it.

IV.     **CONCLUSION**

For the reasons stated herein, the Court finds that MARAD has failed to establish that it made a good faith effort to conduct a search for the requested records, using methods reasonably expected to locate such information, and therefore DENIES its motion for summary judgment. [ECF No. 12]. The Court further permits the discovery requested by Plaintiff in the joint response to the Court's order. See [ECF No. 10 at 5].

**SO ORDERED.**

December 27, 2022

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE